IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM MAYO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:25-cv-02660-JDW** |
| | : | |
| **J. YODIS,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

William Mayo asserts claims arising from prison officials' decision to place him in disciplinary custody while he was a prisoner at the State Correctional Institution – Phoenix ("SCI Phoenix"), and from the way they treated him while he was in disciplinary custody. I will dismiss his Amended Complaint for failure to state a claim. For some claims, I will dismiss with prejudice, meaning Mr. Mayo cannot continue to pursue them. For others, I will dismiss without prejudice and give Mr. Mayo an opportunity to file a Second Amended Complaint to cure the flaws with his Amended Complaint if he can do so in good faith and consistent with the analysis in this Memorandum.

## I.    BACKGROUND

Mr. Mayo is a prisoner at SCI Phoenix. On September 4, 2024, prison authorities escorted him to the Restricted Housing Unit ("RHU"), where he was issued a misconduct report. J. Yodis[1] scheduled a misconduct hearing on September 6, 2024. At the hearing,

---

[1] Mr. Mayo does not know Mr. Yodis's first name, only his first initial.

Mr. Mayo noticed that the misconduct report from which Mr. Yodis was reading from the one with which he had been served. Mr. Mayo advised Mr. Yodis that the two misconduct reports were different, showed Mr. Yodis the misconduct report he had received, and provided testimony to that effect. Mr. Yodis disregarded the discrepancy, issued a finding of guilty, and sentenced Mr. Mayo to 45 days in disciplinary custody.

On September 13, 2024, Mr. Mayo filed an appeal with the Program Review Committee ("PRC"), arguing that he had not been properly served with the misconduct report that resulted in the finding of guilt and the related sanction, in violation of his due process rights. The PRC denied Mr. Mayo's appeal without acknowledging the arguments he raised. Mr. Mayo filed a second level appeal to Superintendent Joseph Terra, reiterating his argument that the failure to serve him with the proper misconduct report violated his due process rights. Mr. Terra remanded the misconduct report to Mr. Yodis for further consideration, but did not do so until 17 days after Mr. Mayo's 45-day sanction expired.

While Mr. Mayo was housed on the RHU, his access to his personal property was restricted, leaving him without basic cosmetic and hygiene items, clean clothing, reading materials, and religious materials. Mr. Mayo requested that two correction prison employees, Captain Karr and Unit Manager Murphy,[2] allow him access to his legal materials. When they did not do so, he filed a grievance. He filed two additional grievances

---

[2] Mr. Mayo does not know Captain Karr's or Ms. Murphy's first name.

complaining about the conditions on the RHU, including his lack of linens and clean clothing over the entire time he was there.

Mr. Mayo claims that Mr. Yodis violated his due process rights when he sentenced him to a period of disciplinary custody based on a misconduct report that was not properly served on him. He also claims that Captain Karr and Ms. Murphy interfered with his access to the courts when they failed to allow him access to his legal documents while he was housed on the RHU. Additionally, he asserts that they violated his Eighth and Fourteenth Amendment rights by subjecting him to a 45-day period without access to his personal property, including his Qur'an, and without linens or a change of clothing. Mr. Mayo also asserts a state law negligence claim against Capt. Karr and Ms. Murphy based on the deprivation of his personal property while housed on the RHU.

## II.    STANDARD OF REVIEW

Mr. Mayo has paid the filing fee in full. Nonetheless, pursuant to 28 U.S.C. § 1915A, I must screen his Complaint. *See* 28 U.S.C. § 1915A(a). Section 1915A(b), in turn, requires me to dismiss Mr. Mayo's complaint or any portion thereof if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or if it "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b)(1), (2).

The standard applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6) applies to statutory screening under § 1915A(b)(1). *See McIntyre v. Wallace*, No. 21-2808, 2021 WL 4318054, at *4 (E.D. Pa. Sept. 23, 2021). Therefore, I must determine whether the

3

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). That means I must accept the factual allegations in the complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. ANALYSIS

### A. Motion To Amend

Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend a pleading once as a matter of course, *inter alia*, no later than 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A). Mr. Mayo sought leave to file an Amended Complaint, but he hasn't served his original Complaint, so the Motion was unnecessary. In any event, I'll grant the Motion and treat the Amended Complaint as the governing pleading in this case.

### B. Federal Law Claims

Mr. Mayo asserts claims based on alleged violations of his constitutional rights. The vehicle to bring federal constitutional claims in federal court is 42 U.S.C. § 1983. *See McCurdy v. Dodd*, 352 F.3d 820, 825 (3d Cir. 2003). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### 1.    Claims based on placement in disciplinary custody

Mr. Mayo asserts a procedural due process claim because the misconduct report with which he was served differed from the report upon which Mr. Yodis relied at the disciplinary hearing. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

For a convicted inmate in the prison disciplinary context, "[d]ue process protection for a state created liberty interest is ... limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts deciding whether conditions are an atypical and significant hardship for purposes of establishing a deprivation of a liberty interest must consider "(1) the duration of the challenged conditions; and (2)

whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). "Absent a protected liberty interest, a prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct proceedings." *Warrick v. Clark,* No. 25-76, 2025 WL 1047716, at *3 (E.D. Pa. Apr. 8, 2025).

Mr. Mayo's 45-day placement in disciplinary custody did not impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest. Accordingly, his due process claim based on placement in disciplinary custody following a hearing is not plausible, even if he wasn't properly notified of the charges. I will therefore dismiss those claims with prejudice. *See Maxwell v. Sober*, No. 21-1939, 2021 WL 4709706, at *5 (E.D. Pa. Oct. 8, 2021).

### 2.    Claims based on treatment in disciplinary custody

#### a.    Access to courts

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "However, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Id*. To make an access-to-

courts claim, a prisoner must allege and prove an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In general, an actual injury occurs when a prisoner demonstrates that he lost a "nonfrivolous" and "arguable" claim because of the denial of access to the courts. *Id.* at 415. "[T]he underlying cause of action, ... is an element that must be described in the complaint." *Id.*

Mr. Mayo does not allege that the lack of access to his legal documents caused an actual injury to pending litigation traceable to the lack of access. Accordingly, his claim is not plausible. I will grant him leave to amend this claim if he can allege additional facts in good faith to cure these flaws.

### b.    Conditions of confinement

The Eighth Amendment's cruel and unusual punishment clause governs claims of convicted inmates who challenge their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991);

*Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99.

To allege the objective component of an Eighth Amendment violation based on the conditions of confinement, a prisoner must allege facts that show prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). However, conditions that are just restrictive and even harsh do not violate the Eighth Amendment; they are just part of the penalty that criminal offenders pay for their offenses against society. *See Rhodes*, 452 U.S. at 347. To allege the subjective component plausibly, a prisoner must also assert facts that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835. A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986)

Mr. Mayo has failed to allege a plausible Eighth Amendment violation. While in disciplinary custody, Mr. Mayo did not have access to many of his personal belongings and did not get clean linens or clothing. These conditions, while unpleasant, inconvenient,

and possibly uncomfortable, do not rise to the level of a constitutional violation.[3] Additionally, Mr. Mayo does not describe any adverse effects he suffered as a result of the alleged denial of clean sheets and clothing. Mr. Mayo's Eighth Amendment claim related to his conditions of confinement is therefore not plausible. I will give him leave to file an amended pleading if he can allege additional facts in good faith that will cure these deficiencies.

### c.    Deprivation of property

Unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A correctional facility's grievance procedure provides an adequate postdeprivation remedy for intentional deprivations of property by correctional employees. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). Accordingly, Mr. Mayo's due process claim for deprivation of his property is not plausible because he had an adequate remedy for the deprivation of his property through the prison grievance system. Therefore, any due process claim based on deprivation of non-religious property is not plausible.

---

[3] Courts around the country have reached similar conclusions in similar situations. *See, e.g., Williams v. Nolan*, No. 25-0115, 2025 WL 2388203 at *3 (W.D. Mich. Aug. 18, 2025); *Dossett v. Neal*, No.22-0104, 2023 WL 34626, at *2 (N.D. Ind. Jan. 3, 2023); *Allebach v. Sherrer,* No. 04-0287, 2005 WL 1793726 (D.N.J. July 27, 2005).

Mr. Mayo asserts in passing that he was deprived of "reading materials" including his Qur'an. (ECF No. 14 at ¶ 17.) But Mr. Mayo does not allege a First Amendment free exercise claim or otherwise mention how being deprived of his Qur'an violated his rights. A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417 (2023). If Mr. Mayo chooses to file a Second Amended Complaint, he may include factual allegations about any free exercise claim he seeks to bring, keeping in mind that in order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981).

### 3.    Claims against Superintendent Terra

#### a.    Official capacity

Mr. Mayo asserts an official capacity claim against Superintendent Terra and seeks money damages. Official capacity claims are indistinguishable from claims against the governmental entity that employs the Defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Superintendent Terra works for the Pennsylvania Department Of Corrections, which is part of the Commonwealth Of Pennsylvania. Thus, Mr. Mayo's official capacity claim against Superintendent Terra is really a claim against the Commonwealth. Mr. Mayo cannot pursue that claim, though, because the Commonwealth is not a "person"

subject to liability under Section 1983. *See Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). In addition, the Eleventh Amendment shields the Commonwealth from liability. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020). The claim therefore cannot survive.

### b.    Supervisory liability

Mr. Mayo cannot hold Mr. Terra liable just because Mr. Terra is in charge of SCI Phoenix. *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005). Nor does Mr. Terra's supervision of employees at the prison give rise to liability. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights,

directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

Mr. Mayo has not alleged that Superintendent Terra maintained a policy that caused constitutional harm or had any personal involvement other than his review of Mr. Mayo's appeal of Mr. Yodis's disciplinary decision. And that decision cannot give rise to liability because the ultimate detention did not violate Mr. Mayo's constitutional rights. I will dismiss this claim, but I'll give Mr. Mayo leave to amend if he can add additional allegations about Superintendent Terra's role.

### C.    State Law Claim

Because I will dismiss the federal claims, I will not exercise supplemental jurisdiction over any state law claims that Mr. Mayo asserts. Nor is there an independent basis for the Court's jurisdiction over such claims. They don't arise under federal law. In addition, Mr. Mayo does not allege the Parties' citizenship; he only provides the address of SCI Phoenix for himself and each Defendant. That's not enough to establish that the parties are diverse, which he would have to establish as an independent basis for jurisdiction over any state law claim. I will therefore dismiss the state law claim without prejudice.

### IV.    CONCLUSION

Mr. Mayo has not stated a plausible claim under federal law. His claims arising from the disciplinary proceedings cannot succeed, and I will dismiss them with prejudice. His other federal claims lack enough facts to make any claim plausible, but I can't say for

certain that Mr. Mayo is unable to state a claim. I will therefore give him an opportunity

to file a Second Amended Complaint. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

October 16, 2025